NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CASTLE COUTURE, LLC,

               Plaintiff,

    v.

AZARIA BRIDAL, LLC *et al.*,

               Defendants.

Civ. No. 17-6857

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Enforce Settlement Agreement filed by Plaintiff Castle Couture, LLC ("Plaintiff"). (ECF No. 35.) Defendant Azaria Bridal, LLC opposes. (ECF No. 38.) The Court has decided the Motion based upon the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Plaintiff's Motion to Enforce Settlement Agreement is granted.

## BACKGROUND

Plaintiff and Defendant Azaria Bridal are competing boutique dress retailers. (Compl. ¶¶ 1, 11, ECF No. 1-1.) Plaintiff alleges that Defendant Azaria Bridal "is not an authorized retailer of the designer brands it purports to sell" but "holds itself out to prospective customers as an authorized retailer." (*Id.* ¶¶ 12–13.) Plaintiff alleges that this false and deceptive conduct has caused harm to Plaintiff's business as a competitor of Defendant Azaria Bridal. (*Id.* ¶¶ 20–23.) Plaintiff commenced this action against Azaria Bridal and its principals, Raja and Priti Madan, (collectively, "Defendants") on July 28, 2017 in New Jersey Superior Court, Law Division,

Monmouth County, alleging: (1) false advertising, (2) deceptive marketing, (3) negligent misrepresentation, (4) unfair competition, and (5) violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (*Id.* ¶¶ 25–73.) On September 7, 2017, Defendants removed this case to federal court. (ECF No. 1.)

From June 2018 until January 2020, the parties engaged in numerous settlement conferences. (Opp'n at 1, ECF No. 38-7.) On January 30, 2020, after the parties had notified the Court that the matter had been settled, the Court entered a Sixty-Day Order administratively terminating the action and giving the parties sixty days in which to "file all papers necessary to dismiss this action . . . or, if settlement cannot be consummated, request that the action be reopened." (Sixty-Day Order, ECF No. 32.) On March 30, 2020, Plaintiff requested an extension of the Sixty-Day Order until May 30, 2020, which the Court granted. (ECF Nos. 33, 34.) On May 30, 2020, Plaintiff filed the present Motion to Enforce Settlement Agreement. (ECF No. 35.) Defendant filed a Partial Opposition (ECF No. 38), and Plaintiff filed a Reply (ECF No. 43). The Motion to Enforce Settlement Agreement is presently before the Court.

## **LEGAL STANDARDS**

"Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." *Martin v. Hoveround Corp.*, 2011 WL 742573, at *2 (D.N.J. Feb. 24, 2011) (citing *Washington v. Klem*, 388 F. App'x 84, 85 (3d Cir. 2010)). Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will

"view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Id.*; *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir. 2002).

## DISCUSSION

"The validity and enforceability of settlement agreements is governed by state contract law." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012). Under New Jersey state law, "there must be a meeting of the minds for an agreement to exist before enforcement is considered." *Kernahan v. Home Warranty Admin. of Fla., Inc.*, 199 A.3d 766, 777 (N.J. 2019) (citation omitted). A meeting of the minds "signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement." *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 216 (N.J. Super. Ct. App. Div. 2011). "Objective manifestations of intent are controlling when determining if there is a meeting of the minds." *Vandergrift v. Pennsauken Sch. Dist.*, 2017 WL 6566139, at *3 (D.N.J. Dec. 22, 2017) (citing *Brawer v. Brawer*, 747 A.2d 790, 796 (N.J. Super. Ct. App. Div. 2000)) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."). "[S]o long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Trian Grp., Ltd. P'ship v. Accident and Cas. Ins. Co. of Winterthur*, 2006 WL 1784310, at *3 (D.N.J. June 26, 2006) (citation omitted).

The parties agree that the Settlement Agreement is an enforceable contract. (Mot. at 4, ECF No. 35-1; Opp'n at 3–6.) The only point of disagreement involves the notification letter attached as Exhibit D to the Settlement Agreement: Plaintiff asserts that the parties agreed to a shorter version of the letter in January 2020 (Hilliard Decl. ¶ 11, ECF No. 35-2), whereas

Defendants contend that no such agreement took place and instead seek to enforce an earlier version of the letter (Rabin Decl. ¶¶ 7–8, ECF No. 38). Plaintiff's version of the Exhibit D letter states "Castle Couture and Azaria Bridal have amicably resolved their dispute, which was the subject of litigation. That lawsuit has been dismissed." (Hilliard Decl. Ex. B, ECF No. 35-4.) Meanwhile, Defendants seek to enforce the following language of the Exhibit D letter:

> Castle Couture and Azaria Bridal have amicably resolved their dispute, which was the subject of litigation.
> Since the parties have resolved their differences, Castle has no objection to Azaria doing business with any dress designers.
> The Parties have agreed to resume normal business activities following their settlement of the above lawsuit. Please contact me if you have any questions or concerns.

(Rabin Decl. Ex. 4, ECF No. 38-4.) Both parties have provided e-mail correspondence of their negotiations of the Exhibit D letter.

On January 13, 2020, the parties discussed the language of the Exhibit D letter over e-mail. Plaintiff's counsel wrote, "The letter will simply state that the parties have amicably resolved their disputes and the lawsuit will be dismissed." (Emails at 5, Hilliard Decl. Ex. D, ECF No. 35-6.) Defendants' counsel then responded with a draft of the letter,[1] to which Plaintiff's counsel responded,

> [T]he letter will be on my letterhead, contain the same signature blocks which appear in your draft, and contain only the first of the three paragraphs in the body of the letter. I will set it up but instead of doing an actual redline, I thought this email would describe the content thoroughly. . . .

(*Id.* at 4.) Defendants' counsel then responded, "Agreed." (*Id.*) The following day, Plaintiff's counsel reported to the Magistrate Judge, with Defendants' counsel copied, that the parties had resolved the issue of the content of the Exhibit D letter, and that the only remaining issue was the

---

[1] The e-mail does not include the attachment of the letter. However, it appears that Defendants' counsel provided the longer version of the letter, based upon Plaintiff's counsel's response.

list of retailers to whom the letter would be sent. (Emails at 76, Rabin Decl. Ex. 2, ECF No. 38-2.)

By January 29, 2020, the parties had agreed on a list of retailers. (*Id.* at 81.) Plaintiff's counsel wrote to Defendants' counsel, "since this was the last open item, I can confirm that we are now settled on terms outlined in our recent discussions," to which Defendants' counsel replied, "I agree[.] [P]lease send the redline and clean final that your client is willing to sign." (*Id.*) Plaintiff's counsel then informed the Court that the parties had reached a settlement.

On March 3, 2020, after further communication, Defendants' counsel requested that Plaintiff "send . . . the signed final for completion by all parties." (*Id.* at 85.) On March 5, 2020, Plaintiff's counsel sent "the final Settlement Agreement with all exhibits for execution by our clients" to Defendants' counsel. (Hilliard Decl. Ex. B.) In the attached Settlement Agreement, the Exhibit D letter stated "Castle Couture and Azaria Bridal have amicably resolved their dispute, which was the subject of litigation. That lawsuit has been dismissed." (*Id.*) Defendants' counsel simply responded "thank you." (Emails at 90, Rabin Decl. Ex. 2.) On March 12, 2020, Plaintiff's counsel sent the same Settlement Agreement, executed by Plaintiff, to Defendants' counsel and asked that Defendants also execute the agreement. (Hilliard Decl. Ex. C, ECF No. 35-5.) Plaintiff purports that, throughout March, Defendants' counsel continued to advise that he was working on obtaining his clients' signatures and did not indicate any issues with the terms of the Settlement Agreement. (Hilliard Decl. ¶¶ 9–10.)

After follow-up e-mails by Plaintiff's counsel, on March 31, 2020, Defendants' counsel responded "My client thinks you have attached the wrong Ex D . . . We are OK with it going on your letterhead, but you took out the text of the letter also." (Emails at 92, Rabin Decl. Ex. 2.) After Plaintiff's counsel reminded him of their prior discussions, Defendants' counsel responded,

"I remember the discussion. I don't think we agreed on the Exhibit D you now have attached. Do you have something from me accepting the Ex D you attached to the signed agreement? I just don't recall that." (*Id.* at 95.)

Based on the correspondence between the parties, the Court finds that there was a meeting of the minds as to all terms of the Settlement Agreement by the end of January 2020. Regarding the Exhibit D letter specifically, by responding "agreed" to a detailed description of the letter on January 13, 2020, Defendants' counsel outwardly manifested his assent to the contents of the letter. Additionally, Defendants' counsel's failure to raise any objections to the Exhibit D letter for two and a half months, despite multiple opportunities to do so, further manifested his agreement to the contents of the letter. Therefore, because all of the essential terms of the Settlement Agreement were finalized and agreed upon by the parties, the Settlement Agreement, as reflected in Exhibit B to the Hilliard Declaration, is a binding contract. Defendants' apparent change of heart as to the language of the Exhibit D letter over two months later does not render this contract unenforceable. *See Trian Grp.*, 2006 WL 1784310, at *5 ("Where a party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement.") (citations omitted). Accordingly, the Court grants Plaintiff's Motion to Enforce Settlement Agreement and finds that the parties are bound by the Settlement Agreement attached as Exhibit B to the Hilliard Declaration.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Motion to Enforce Settlement Agreement filed by Plaintiff

Castle Couture, LLC (ECF No. 35) is granted. An appropriate Order will follow.


Date: <u>September 18, 2020</u>                              <u>*/s/ Anne E. Thompson*</u>
                                                                                          ANNE E. THOMPSON, U.S.D.J.